**FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CSC HOLDINGS, LLC, | |
| Plaintiff, | **OPINION** |
| v. | Civ. No. 10-1057 (WHW) |
| OPTIMUM NETWORKS, INC. AND FRANK AZNAR, | |
| Defendants. | |

**Walls, Senior District Judge**

      Defendants Optimum Networks, Inc. and Frank Aznar move to dismiss the complaint filed by plaintiff CSC Holdings, Inc., also known as Cablevision. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the motion is decided without oral argument. The motion is denied.

**FACTS AND PROCEDURAL BACKGROUND**

      Plaintiff is a Delaware limited liability company and a provider of telecommunications and entertainment services. (Compl. ¶¶ 1, 6.) In addition to the cable television and digital telephone services it provides, plaintiff is an internet service provider ("ISP") to its residential and business customers. (Compl. ¶ 9.) Defendant Optimum Networks, Inc. is a New Jersey corporation and an ISP to primarily commercial entities; defendant Frank Aznar is its founder. (Compl. ¶¶ 7-8; Def. Br. 3.)

**FOR PUBLICATION**

Plaintiff alleges that, since the mid-1990s, it has been providing goods and services using the trademark "OPTIMUM®", including internet access, webhosting, and email. (Compl. ¶ 10.) Plaintiff asserts that it "owns incontestable U.S. Registration No. 2,609,003 for its OPTIMUM® mark based on first use in commerce in August 1994." (Compl. ¶ 15.) Plaintiff alleges that, "since its adoption in 1994, the OPTIMUM® mark has always been the 'umbrella' mark for Cablevision's digital communications services." (Compl. ¶ 13). The marks under this "umbrella" include OPTIMUM BUSINESS®, OPTIMUM® LIGHTPATH, and OPTIMUM® TRIPLE PLAY (Compl. ¶¶ 11-12), as well as OPTIMUM® ONLINE, OPTIMUM® PREFERRED, OPTIMUM® VOICE, and OPTIMUM® REWARDS (Compl. ¶ 16). Plaintiff also alleges that, "since as early as 1994," it has "registered and used OPTIMUM®-inclusive Internet domain names . . . in connection with websites promoting the various services offered under the OPTIMUM® marks." (Compl. ¶ 17.) These domain names include Optimum.com, Optimum.net, OptimumOnline.com, and OptimumRewards.com, among others. (Id.)

On March 2, 2010, plaintiff filed a complaint in this Court, alleging that "long after" it commenced use of the OPTIMUM® marks "in connection with ISP and related services," and "long after those marks became exclusively associated" with plaintiff, defendants began using Optimum ISP, Optimum Networks, Optimum Networks, Inc., and OptimumISP.com in connection with their products and services. (Compl. ¶¶ 18-19.) As alleged by Plaintiff, these "Infringing Designations" and "Infringing Domain Name" are unlawful because they "incorporate [plaintiff's] longstanding, federally registered OPTIMUM® mark in its entirety," and further associate themselves with plaintiff and its OPTIMUM® services through the

**FOR PUBLICATION**

inclusion of the terms "ISP" and "Networks." (Compl. ¶ 20.) Plaintiff asserts that defendants commenced use of the infringing designations and domain name despite actual knowledge and constructive notice of plaintiff's use of the OPTIMUM® marks and domain names, and that defendants refused to comply with plaintiff's pre-suit request to voluntarily discontinue use of the infringing designations and domain names. (Compl. ¶¶ 21-22.) Plaintiff contends that defendants' activities are likely to cause consumers to falsely believe that defendants' products and services are associated with plaintiff, and that defendants' actions were undertaken with "the calculated purpose of exploiting and deriving a commercial benefit from the extensive goodwill and recognition built up in Plaintiff's OPTIMUM® mark[s]." (Compl. ¶¶ 24-26.)

Plaintiff's complaint states causes of action for trademark infringement, false designation of origin, and cybersquatting under the Lanham Act, 15 U.S.C. §§ 1051, et. seq., as well as unfair competition under New Jersey statutory and common law, N.J.S.A. 56:4-1. Plaintiff seeks (1) a permanent injunction restraining Defendants from using any designation or domain name that in any way incorporates or is similar to the OPTIMUM® marks; (2) monetary damages, including lost profits and treble damages; and (3) reasonable attorneys' fees and costs.

On May 3, 2010, defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted.[1] Fed. R. Civ. P. 12(b)(6). Defendants assert that defendant

---

[1] Though defendants fail to state as much, the Court concludes from the substance of defendants' brief in support of the motion that the motion is intended to be a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted, filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Moreover, although the motion is styled as a "Motion to Dismiss or in the Alternative, More Definite Statement," because defendants make no reference in their brief to the "more definite statement" they seek, the Court disregards the caption and treats the motion only as a motion to dismiss filed pursuant to Rule 12(b)(6).

FOR PUBLICATION

Optimum Networks, Inc. was actually "the first user of the optimum networks phrase," and that, as a result, plaintiff cannot sustain a trademark infringement claim against defendants. (Def. Br. 4.) Defendants also argue that plaintiff has failed to state a cause of action because the word "optimum" is "a commonly used descriptive term" that is not entitled to trademark protection. (Def. Br. 6.) Defendants urge this Court to dismiss plaintiff's complaint.

## STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), the court is required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 306 (3d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 546 (2007) (citations omitted). Thus, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer

FOR PUBLICATION

evidence to support the claims.'" Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## DISCUSSION

Plaintiff's complaint states four causes of action: trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1); false designation of origin under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a); violation of the Anticybersquatting Consumer Protection Act under Section 43 of the Lanham Act, 15 U.S.C. § 1125(d); and unfair competition under New Jersey statutory and common law, N.J.S.A. 56:4-1. The Court considers whether each cause of action states a claim upon which relief can be granted.

**A. Trademark Infringement and False Designation of Origin under the Lanham Act**

"Congress enacted the Lanham Act in 1946 in order to provide national protection for trademarks used in interstate and foreign commerce." Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 193 (1985). The Lanham Act, 15 U.S.C. §§ 1051, et. seq., "was intended to make 'actionable the deceptive and misleading use of marks' and 'to protect persons engaged in . . . commerce against unfair competition.'" Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 767-68 (1992) (quoting 15 U.S.C. § 1127). "A trademark is defined in 15 U.S.C. § 1127 as including 'any word, name, symbol, or device or any combination thereof' used by any person 'to identify and distinguish his or her goods, including a unique product from those manufactured or sold by others and to indicate the sources of the goods, even if that source is unknown.'" Two Pesos, Inc., 505 U.S. at 768 (quoting 15 U.S.C. § 1127). The Lanham Act "broadly prohibits uses of trademarks, trade names, and trade dress that are likely to cause confusion about the

FOR PUBLICATION

source of a product or service. Infringement law protects consumers from being misled by the use of infringing marks and also protects producers from unfair practices by an 'imitating competitor.'" Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 428 (2003) (citations omitted).

**1. Standard of Review**

Section 32 of the Lanham Act provides:

> Any person who shall, without the consent of the registrant[,] use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant.

15 U.S.C. § 1114(1)(a).

Section 43(a) of the Lanham Act provides:

> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association . . . or as to the origin, sponsorship, or approval of . . . goods, services, or commercial activities . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A)-(B)

The Third Circuit has stated that it "measure[s] federal trademark infringement [under Section 32], 15 U.S.C. § 1114, and federal unfair competition [under Section 43], 15 U.S.C. § 1125(a)(1)(A), by identical standards." A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000). To prove either trademark infringement under Section 32 or unfair competition under Section 43(a), a plaintiff must establish that: (1) the mark is valid and

FOR PUBLICATION

legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services. Checkpoint Sys., Inc. v. Check Point Software Techs., Inc., 269 F.3d 270, 279 (3d Cir. 2001); A & H Sportswear, Inc., 237 F.3d at 210 (3d Cir. 2000) (citation omitted).

The first two elements required to prove infringement and unfair competition under the Lanham Act – validity and ownership of the mark – are satisfied by a showing that the plaintiff's mark is registered upon the Principal Register of the U.S. Patent and Trademark Office, particularly if the mark has become incontestable.[2] 15 U.S.C. §§ 1057(b), 1115(a)-(b); Commerce Nat'l Ins. Serv., Inc. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 438 (2000).

The third element required to prove infringement or unfair competition – likelihood of confusion – is a question of fact. See Checkpoint Sys., Inc., 269 F.3d at 301. "To prove likelihood of confusion plaintiffs must show that customers viewing the mark would probably assume the product or service it represents is associated with the source of a different product or service identified by a similar mark." Checkpoint Sys., Inc., 269 F.3d at 301.

In Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 463 (3d Cir. 1983), the Third Circuit adopted a non-exhaustive list of factors, known as the "Lapp factors," to be considered in evaluating the likelihood of confusion between a plaintiff's mark and a defendant's mark. Although the Lapp factors were traditionally applied only in cases of non-competing goods, the

---

[2] Under 15 U.S.C. § 1065, "[a] trademark becomes incontestable after the owner files affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years, that there is no pending proceeding and that there has been no adverse decision concerning the registrant's ownership or right to registration." Fisons Horticulture, Inc. v. Vigoro Indus., 30 F.3d 466, 472 n.7 (3d Cir. 1994) (citing 15 U.S.C. § 1065).

FOR PUBLICATION

Third Circuit has held that the Lapp factors should also be applied in cases involving directly competing goods.  Checkpoint Sys., Inc., 269 F.3d at 280 n.8; A & H Sportswear, Inc., 237 F.3d at 207, 213-215 (3d Cir. 2000).

>The ten Lapp factors are:
>
>(1) the degree of similarity between the owner's mark and the alleged infringing mark;
>(2) the strength of the owner's mark;
>(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;
>(4) the length of time the defendant has used the mark without evidence of actual confusion arising;
>(5) the intent of the defendant in adopting the mark;
>(6) the evidence of actual confusion;
>(7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media;
>(8) the extent to which the targets of the parties' sales efforts are the same;
>(9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors;
>(10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.

KOS Pharms., 369 F.3d at 709 (citation omitted); A & H Sportswear, Inc., 237 F.3d at 215.  The Third Circuit has stressed that "the Lapp test is a qualitative inquiry" and that "the Lapp factors are not to be mechanically tallied, but rather . . . are tools to guide a qualitative decision."  A & H Sportswear, Inc., 237 F.3d at 215, 216 (citation omitted).

### 2. Sufficiency of Plaintiff's Allegations

Plaintiff alleges that it has been using the OPTIMUM® mark in commerce since 1994 and that the mark has become incontestable.  (Compl. ¶ 15.)  Plaintiff also alleges that many of the other OPTIMUM®-inclusive marks are registered with the USPTO and that some of these

**FOR PUBLICATION**

marks have become incontestable. (Compl. ¶¶ 15-16 (providing several USPTO registration numbers).) Plaintiff further alleges that defendants' use of the term "optimum" is likely to cause confusion between plaintiff and defendants' marks, citing several factors that are considered in the Lapp test. Specifically, plaintiff alleges that the parties' marks are similar because they are highly similar in sight, sound, and meaning (Lapp factor 1) (Compl. ¶ 20), that there is actual confusion among consumers with respect to the parties' marks (Lapp factors 4 and 6) (Compl. ¶ 24), and that defendants intended to copy plaintiffs' mark (Lapp factor 5) (Compl. ¶¶ 25-26). In addition, although plaintiff does not explicitly state as much, its allegation that the OPTIMUM® mark is a registered and incontestable mark (Compl. ¶¶ 15-16) implicates the strength of the owner's mark (Lapp factor 2). Moreover, its allegations that the parties are both ISPs providing high speed internet access, website hosting, and email service to customers in New Jersey (Compl. ¶¶ 9, 18) implicate other Lapp factors, including the extent to which the targets of the parties' sales efforts are the same (Lapp factor 8), the relationship of the goods in the minds of the consumers (Lapp factor 9), and other facts suggesting that the consuming public might expect the prior owner to manufacture both products (Lapp factor 10).

Defendants dispute plaintiff's factual allegations, arguing that defendant Optimum Networks, Inc. was "the first user of the optimum networks phrase" because it was in business before plaintiff registered the mark "optimum network." (Def. Br. 3.) Defendants assert that defendant Optimum Networks, Inc. was "organized in 2000 as a provider of network installation and services," whereas plaintiff's "registration for the phrase the optimum network indicates that the company first used this phrase in sales or commerce on April 7, 2007." (Def. Br. 3.)

FOR PUBLICATION

Defendants argue that, because defendant Optimum Networks, Inc. is actually "the first user of the optimum networks phrase," plaintiff cannot sustain a trademark infringement claim against defendants. (Def. Br. 4.) Defendants also argue that plaintiff has failed to state a cause of action because the word "optimum" is "a commonly used descriptive term" that is not entitled to trademark protection. (Def. Br. 6.) In support of this argument, defendants note that numerous businesses in several industries use the term "optimal or optimum," and that plaintiff has apparently not brought suit against them for unfair competition. (Def. Br. 1-2.)

On a motion to dismiss for failure to state a claim, this Court must accept all of plaintiff's allegations as true and construe disputed facts in favor of plaintiff. In so doing, the Court accepts plaintiff's allegations that it has been using the OPTIMUM® mark for longer than defendants, and rejects defendants' contention that it was the first user of the term "optimum networks." The Court also accepts plaintiff's allegation that the OPTIMUM® mark is registered and incontestable – an allegation that refutes defendants' argument that the mark is not entitled to legal protection, as incontestable marks are, by definition, valid and protectable.[3] Finally, the

---

[3] Plaintiff and defendants engage in a lengthy dispute regarding whether the term "optimum" is classified as "generic" or "descriptive" on the continuum of trademark strength and whether, if it is in fact descriptive, it has acquired "secondary meaning." (Def. Br. 6-8; Pl. Opp. 11-13; Def. Reply 3-9.) These issues go to the validity and protectability of an unregistered trademark, as well as the "distinctiveness" analysis of Lapp factor 2. See, e.g., Checkpoint Sys., Inc., 269 F.3d at 270, 281 (3d Cir. 2001); A & H Sportswear, Inc., 237 F.3d at 207, 221-22; Commerce Nat'l Ins. Serv., Inc., 214 F.3d at 438; Fisons Horticulture, Inc., 30 F.3d at 478.
   The Court need not reach these issues on a motion to dismiss because it accepts as true plaintiff's allegation that the OPTIMUM® mark is registered and incontestable. In so doing, the Court finds that the mark is valid and legally protectable and that the mark is presumed to be a strong one under Lapp factor 2. Commerce Nat'l Ins. Serv., Inc., 214 F.3d at 438; Two Pesos, Inc., 505 U.S. at 769; Park 'N Fly, Inc., 469 U.S. at 194.

FOR PUBLICATION

Court accepts plaintiff's allegations regarding the factors that may lead to a likelihood of confusion between plaintiff's mark and defendants' mark.

Accepting plaintiff's allegations as true, plaintiff has established that it owns the OPTIMUM® mark, that the OPTIMUM® mark is a valid and legally protectable mark, and that defendants' use of the term "optimum" in connection with their goods and services is likely to cause confusion. Plaintiff has pled sufficient facts to allow the Court draw a reasonable inference that the defendant is liable for trademark infringement and unfair competition. The Court finds that plaintiff has stated a plausible claim for relief under Section 32 and Section 43(a) of the Lanham Act.

**B. Cybersquatting Violations under the Lanham Act**

   **1. Standard of Review**

   Section 43(d) of the Lanham Act, entitled "cyberpiracy prevention," provides:

> (1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person
> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> (ii) registers, traffics in, or uses a domain name that--
> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
> (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. § 1125(d)(1)(A).

The Third Circuit has explained that, "[i]n general, cybersquatting is the act of registering, in bad faith and to garner profit, on the internet a domain name so similar to a

**FOR PUBLICATION**

distinctive mark that it is confusing." Green v. Fornario, 486 F.3d 100, 103 n.5 (3d Cir. 2007). In deciding whether a defendant has committed a cybersquatting violation under Section 43(d), a district court must first determine whether plaintiff's mark is "a 'distinctive' or 'famous' mark and, therefore, is entitled to protection under the Act." Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001). If the mark in question is entitled to protection, "the next inquiry is whether [defendant's] domain names are 'identical or confusingly similar' to [plaintiff's]." Id. at 483. If the defendant's domain names are confusingly similar, "[t]he final inquiry . . . is whether [defendant] acted with a bad faith intent to profit from [plaintiff's] distinctive and famous mark or whether [its] conduct falls under the safe harbor provision of the Act." Id. at 484. Congress has provided nine factors for courts to consider in determining whether a defendant acted with bad faith:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure

FOR PUBLICATION

>to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
>(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
>(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B). As the Third Circuit has noted, this list is non-exhaustive. Zuccarini, 254 F.3d at 484.

### 2. Sufficiency of Plaintiff's Allegations

Plaintiff alleges that it has been using the OPTIMUM® mark and other OPTIMUM®-inclusive marks in commerce since 1994, that many of these marks are registered with the USPTO, and that several of them have become incontestable. (Compl. ¶¶ 15-16.) Plaintiff represents that, through extensive promotion and use, its OPTIMUM®-related marks "have become uniquely identified with the services of [plaintiff] and its predecessor" and "have come to represent enormous goodwill of [plaintiff]." (Compl. ¶ 14.) Plaintiff alleges that, since 1994, it has been using "OPTIMUM®-inclusive Internet domain names" in connection with its OPTIMUM®-branded products and services, and that these domain names include Optimum.com, OptimumRewards.com, OptimumAutos.com, and OptimumLightpath.com. (Compl. ¶ 17.) Plaintiff further alleges that, "long after such marks and domain names became exclusively associated with [plaintiff] and it services, Defendants began using the domain name OptimumISP.com . . . in connection with their business and services." (Compl. ¶ 19.) Plaintiff avers that defendants did so in bad faith; although plaintiff does not plead specific facts related to

**FOR PUBLICATION**

the bad faith factors listed in 15 U.S.C. § 1125(d)(1)(B), it alleges that defendants' conduct is "intentionally fraudulent, malicious, willful and wanton" (Compl. ¶ 26), and that it was undertaken "for the calculated purpose of exploiting and deriving a commercial benefit from the extensive goodwill and recognition built up in Plaintiff's OPTIMUM® mark" (Compl. ¶ 25).

Defendants apparently respond to these allegations by arguing that defendants were in fact the "first user[s]" the term "optimum" (Def. Br. 3-4), noting that "Plaintiff fails to detail when it first used optimum online or optim ISP [sic], and when it alleges defendant did." (Def Br. 9.)  In this vein, defendants also assert that "[p]art of the complaint alleges consumer fraud and fraud both of which must be pled with particularity." (Def Br. 9 (citing Harper v. LG Electronics USA, 595 F. Supp. 2d 486 (D.N.J. 2009).)

Defendants are correct in stating that plaintiff did not allege an exact date on which defendants commenced their alleged infringing uses, stating only that these infringing uses commenced "long after" OPTIMUM®-related marks and domain names became exclusively associated with plaintiff.  (Compl. ¶¶ 18-19.)  However, there is no requirement that a senior user specify the exact date when an allegedly infringing junior user commenced use of an identical or similar mark, 15 U.S.C. § 1125(d)(1)(A), and plaintiff did allege that it began using OPTIMUM®-related domain names in 1994.  (Compl. ¶ 17.)  As discussed, the Court accepts as true plaintiff's allegations that it has been using OPTIMUM®-branded marks for longer than defendants.  Moreover, defendants' discussion of "fraud" and "consumer fraud" is misplaced.  While allegations of fraud must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure, this case does not involve allegations of fraud as contemplated by Rule 9(b), but

**FOR PUBLICATION**

instead involves alleged cybersquatting violations. The case cited by defendants, Harper v. LG Electronics USA, 595 F. Supp. 2d 486 (D.N.J. 2009), is inapposite, as its discussion of the Rule 9(b) pleading requirement centered around statutory fraud claims under the New Jersey Consumer Fraud Act and the comparable statutes of other states. Harper, 595 F. Supp. 2d at 491. No such claims are present here and Rule 9(b) is not implicated. Finally, though defendants do not dispute this point, the Court finds that plaintiff's allegations of defendants' bad faith are sufficient to allow a reasonable inference that defendant's conduct satisfies the bad faith factors listed in 15 U.S.C. § 1125(d)(1)(B).

Accepting plaintiff's allegations as true, plaintiff has established that the OPTIMUM® mark is a distinctive or famous mark that is legally protectable; that the defendants' domain names are identical or confusingly similar to plaintiff's; and that defendant acted with a bad faith intent to profit from using plaintiff's distinctive and famous OPTIMUM® mark. Plaintiff has pled sufficient facts to allow the Court to draw a reasonable inference that the defendant is liable for anticybersquatting violations. The Court finds that plaintiff's allegations state a plausible claim for relief under Section 43(d) of the Lanham Act.

**C. New Jersey Unfair Competition Law**

    **1. Standard of Review**

New Jersey's statutory unfair competition law provides: "No merchant, firm or corporation shall appropriate for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals." N.J.S.A. 56:4-1. This state unfair competition provision is equivalent to the federal unfair competition

**FOR PUBLICATION**

provision contained in Section 43(a) of the Lanham Act, and a claim for unfair competition under New Jersey common law is substantially similar to these statutory claims. See, e.g., Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 105 (3d Cir. 2004); American Tel. and Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1433 (3d Cir. 1994). Accordingly, a finding of liability under Section 43(a) of the Lanham Act leads to a finding of liability under the New Jersey unfair competition law. Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 210 F. Supp. 2d 552, 560-61 (D.N.J. 2002); Nat'l Football League Prop., Inc. v. N.J. Giants, Inc., 637 F. Supp. 507, 519-520 (D.N.J. 1986) (citing SK & F Co. v. Premo Pharm. Lab., Inc., 625 F.2d 1055, 1065 (3d Cir.1980)).

### 2. Sufficiency of Plaintiff's Allegations

Because, as discussed, plaintiff has stated a claim for unfair competition under Section 43(a) of the Lanham Act, the Court finds that plaintiff also has stated a claim for unfair competition under New Jersey statutory and common law.

**CONCLUSION**

Plaintiff has stated a claim upon which relief can be granted. The Court denies defendants' motion to dismiss.

It is on this 17th day of August, 2010:

ORDERED that Defendants' Motion to Dismiss is DENIED.

                                              **s/ William H. Walls**
                                              United States Senior District Judge